DOMINIC SHERIDAN,

                Plaintiff,

v.

V. MILLER, T. HEETER, K. SCHEIBER, SGT. SIMPSON, R. SMOCZYNSKI, SGT. MAY, DAVID ZOERNER, LT. SCHROEDER, M. RIVERA-VELEZ, and BOYER

                Defendants.

Case No. 25-CV-1767-JPS

**ORDER**

Plaintiff Dominic Sheridan, an inmate confined at Kenosha County Jail ("KCJ"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order screens Plaintiff's complaint and resolves his motion for leave to proceed without prepaying the filing fee and motion to appoint counsel.

1.      **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On December 1, 2025, the Court ordered Plaintiff to pay an initial partial filing fee of $32.00. ECF No. 6. Plaintiff paid that fee on December 18, 2025. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 3. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2.    SCREENING THE COMPLAINT

### 2.1    Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff alleges that on September 28, 2025, Defendants Scheiber, Smoczynski, and Bair entered the med pod to conduct a search. ECF No. 1 at 2. Scheiber yelled, "Get up you crippled shrimps it's a shakedown." *Id.* Plaintiff walked down the hall to be observed by Defendant Sanchez. *Id.* Supervisors were informed of Scheiber's statement. *Id.*

Upon returning to his housing unit, Plaintiff heard Defendant Smoczynski yelling at inmate Locke. *Id.* Locke believed the new rules could be perceived as retaliation since Scheiber's comment had been reported. *Id.* Smoczynski became hostile and claimed she knew what Racine County did to Locke. *Id.* Smoczynski then instructed Locke to be taken to the hole *Id.* Bair tried to calm Smoczynski down. *Id.* Scheiber returned to the housing unit; she looked upset and apologized for her previous statements. *Id.*

After this incident, harassment and racism began. *Id.* Inmates were then required to wear their full blue uniforms every day. *Id.* Inmates had previously been allowed to rest under blankets, exercise, and use the restroom with a privacy curtain. On October 3,2025, Defendant Heeter yelled for inmates to get out from underneath their blankets. *Id.* at 3. All

inmates in the room at the time were African American inmates. *Id.* The officer explained this was a rule they needed to follow. *Id.*

Later, Locke asked Heeter if her body camera was recording and she replied, "Always." *Id.* Locke asked why Hughart, another inmate, was allowed under the covers. *Id.* Heeter became agitated and replied that some inmates had medical excuses. *Id.* Plaintiff and Locke told Heeter they did not know you could get a medical excuse. *Id.* Heeter replied that the recorded times were wrong anyway; she was extremely upset and agitated. *Id.*

On October 6, 2025, Sepanski started her shift and told the inmates to get out from underneath their blankets. *Id.* Every inmate except Hughart followed this direction. *Id.* About half an hour later, Sepanski and Nurse Alexandria informed Hughart that he could not be underneath his blankets a second time. *Id.* Plaintiff and Locke asked if he had a medical pass. *Id.* They checked and Hughart had a medical exemption for an extra blanket and the use of a pillow; he did not have a medical exemption to stay under the blankets. *Id.* Plaintiff believes this proves Heeter's earlier comments were racist and exclusionary. *Id.* On October 9, 2025, Plaintiff asked clothing as allowed by the rulebook. *Id.* The officer said the rulebook was outdated and that he would only provide two sets of clothing. *Id.* Other officers agreed the rulebook was correct. *Id.*

On October 10, 2025, Plaintiff asked Smoczynski how to spell her name. *Id.* She responded that Locke knew and then mocked Plaintiff's disability by stating, "Your[sic] not blind I can see your badge." *Id.* Smoczynski was later heard saying she would write inmates up for anything and everything. *Id.* Plaintiff demanded a privacy curtain, and Bair gave the inmates the curtain to use in med pod 2. *Id.* at 3–4. On October 16,

Page 4 of 14

2025, Bliss informed Plaintiff that med pod was no longer supposed to be treated like a segregation unit. *Id.* at 4.

On October 24, 2025, Plaintiff and other inmates were denied clean laundry for several days because it was a one for one exchange at the time. *Id.* Plaintiff was forced to wear the same clothes for two weeks as a result. *Id.* In November 2025, Plaintiff was denied his legally required scribe to attend law library time with him on two occasions. *Id.* As a result, Plaintiff was unable to complete his legal work, and this was a direct violation of the Americans with Disabilities Act. *Id.* Defendants' actions of targeted discrimination and sleep deprivation have caused him severe anxiety and causes him to fear for his safety. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff may not proceed on an Eighth Amendment conditions of confinement claim. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522

F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

Here, Plaintiff alleges that he was subjected to unclean clothes for two weeks. Courts have found that unclean bedding or clothing for certain lengths of time, although unpleasant, does not rise the level of an Eighth Amendment violation. *See Perkins v. Sheahan*, 2005 WL 1564976, at *3 (N.D. Ill. May 10, 2005) ("Being denied clean clothes and bedding for thirty days, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim."); *Moss v. DeTella*, 1997 WL 24745, at *2 (N.D. Ill. Jan. 16, 1997) (holding that lack of clean clothes and bedding for 111 days did "not rise to the level of a constitutional violation"). Plaintiff's allegations of unclean clothing for a relatively short period of time do not rise to the level of an Eighth Amendment claim. As such, the Court finds that Plaintiff fails to state an Eighth Amendment claim based on his conditions of confinement.

Second, the Court finds that Plaintiff may not proceed on a First Amendment retaliation claim. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that retaliation occurred after supervisors found out about Scheiber's inappropriate comment. It is well established

that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). However, the facts as alleged do not suggest Plaintiff complained either verbally or in writing about this incident. It is therefore unclear whether Plaintiff engaged in protected activity. As for the second element, Plaintiff alleges that certain rules were enforced more harshly following this incident. Based on these allegations, it is unclear if Plaintiff suffered a deprivation likely to deter First Amendment activity. Plaintiff's allegations are too vague and do not provide the Court sufficient information concerning Defendants' motivations for any action or lack thereof. The Court therefore finds that Plaintiff's allegations fail to state a First Amendment retaliation claim.

Third, Plaintiff may not proceed an equal protection claim. "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272–74 (1979); *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–66 (1977); *Washington v. Davis*, 426 U.S. 229, 239–42 (1976)). "To prove discriminatory effect, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Id.* at 636.

Here, Plaintiff alleges generally that certain rules were enforced against African American prisoners. Plaintiff does not allege, however, that they were treated differently from any other inmates not in the protected class. As such, the Court does not find that Plaintiff's complaint contains sufficient information to proceed on an equal protection claim.

Finally, Plaintiff has not stated a claim under the Americans with Disabilities Act ("ADA"). Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). Analysis under the Rehabilitation Act ("RA"), 29 U.S.C. § 794, is essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical").

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. *See Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 624, 644 (7th Cir. 2015)). DOC is a proper defendant to these claims, as that is the "public entity" that administers the programs and benefits to which he seeks access

and is the entity that would be responsible for providing him with a reasonable accommodation. *See* 42 U.S.C. §§ 12131(1)(B) & 12132; 29 U.S.C. § 794; Wis. Stat. § 301.04 (providing that DOC may sue and be sued).

> The term "qualified individual with a disability" means,

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, Plaintiff's complaint does not state sufficient factual detail to state an ADA claim. Plaintiff is blind and alleges being denied his approved accommodation to have a scribe at the law library on only two separate occasions in November 2025. This allegation is insufficient, however, to show that Plaintiff was denied meaningful access to the law library. "Accommodations must give 'meaningful access to the benefit that the grantee offers.'" *McDaniel v. Syed*, 115 F.4th 805, 824 (7th Cir. 2024) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). Plaintiff's complaint does contain facts to show he did not have meaningful access to the law library based on only two instances of being denied his accommodation in the law

library. Plaintiff may provide additional factual detail regarding this claim in an amended complaint.

The Court will provide Plaintiff the opportunity to amend his complaint to cure the deficiencies identified in this Order. An amended complaint must be filed on or before **May 5, 2026**. Failure to file an amended complaint within this time period may result in dismissal of this action. When writing his amended complaint, Plaintiff should provide the Court with enough facts to answer the following questions: (1) Who violated his constitutional rights?; (2) What did each person do to violate his rights?; (3) Where did each person violate his rights?; and (4) When did each person violate his rights? Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its amended complaint form. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaints and must be complete in itself without reference to the prior complaints. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the

"prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

### 3.  MOTION TO APPOINT COUNSEL

Finally, the Court will deny Plaintiff's motion to appoint counsel without prejudice. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might

consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Here, Plaintiff has submitted no evidence that he contacted attorneys to represent him in the matter aside from a statement in his motion. ECF No. 2. Plaintiff includes no documentation of any such requests, nor does he list any attorneys he contacted. *Id.* As such, the Court finds that Plaintiff has failed to satisfy the first *Pruitt* factor and his motion will therefore be denied without prejudice. Plaintiff may renew his request, if needed, and cure the deficiencies identified in this Order.

## 4. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 3, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 2, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint that complies with the instructions in this Order on or before **May 5, 2026**. If Plaintiff files an amended complaint by the deadline, the Court will screen the amended complaint under 28 U.S.C. § 1915A. If Plaintiff does not file an amended complaint by the deadline, the Court will dismiss this case based on his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled

"Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $318.00 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 13th day of April, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.